W. B. Cabell *v.* Standard Oil Company of New Jersey

(No. 6962)

Submitted May 19, 1931.   Decided June 9, 1931.

*A. F. McCue, R. E. Horan* and *Rummel, Blagg & Stone,* for plaintiff in error.

*William G. Brown* and *Dillon, Mahan & Holt,* for defendant in error.

Maxwell, Judge:

The defendant complains of verdict and judgment against it for $10,000, in the circuit court of Nicholas County, in

favor of the plaintiff for personal injuries suffered by him in an explosion of an alleged mixture of kerosene and gasoline.

Plaintiff was injured early in the morning of January 30, 1929. He says that after he had dressed he went to the kitchen and stirred down the ashes in the stove (bituminous coal was used for fuel), saw no indication of burning coals, placed some kindling wood and fresh coal on the burned coal, and then picked up the oil can (one-gallon in size) from the floor of the kitchen where it had remained through the night and started to pour oil from the can onto the kindling and coal (the spout of the can being about eighteen inches from the kindling), and that just as he started to pour the liquid the explosion occurred. The bottom was blown out of the can and fire ensued. Serious results attended.

The liquid in the can had been purchased as and for kerosene by the plaintiff three days prior to the accident from John Dickinson, a retail merchant in the neighborhood. Some of the liquid, but just how much is not definitely shown, had been taken out of the can for use in filling lamps prior to the morning of the accident. Dickinson had purchased what was supposed to be 77 gallons of kerosene from a tank wagon of the defendant the 14th of January, 1929, which liquid was on said date placed by Hampton and Miller, agents for the defendant, into a large container in Dickinson's wareroom adjoining his store. The one gallon of oil which plaintiff purchased of Dickinson on the 27th came out of said container and was a part of the said 77-gallon delivery. It is the plaintiff's theory that through negligence or mistake of some sort the liquid which was placed by Hampton and Miller into the Dickinson tank was not commercial kerosene but was in fact a mixture of gasoline and kerosene in the proportion of fifteen per centum gasoline and eighty-five per centum kerosene.

A detailed discussion of the voluminous evidence will not be attempted. Though the record evidence of the defendant is full and complete, showing the exact gallonage of both gasoline and kerosene in the separate compartments of the defendant's truck operated by Hampton and Miller on the 14th of January, 1929, and accounting for the sale and delivery of every gallon thereof on that day by them, the records

do not eliminate the human element. The truck contained four large compartments, two for kerosene, two for gasoline. A pipe leading from each of the compartments terminated at the rear of the truck with a spigot attached. The spigots bore labels as to the contents of the compartments respectively. When Hampton and Miller made the delivery on the 14th of January to Dickinson the tank truck was standing near the warehouse door. Miller drew the oil from the spigot into five-gallon cans and as each can was filled he handed it to Hampton who stood in the door of the wareroom and carried the oil to the tank and poured it into the same. The spigots closed automatically when not held open by the operator. These two men say they made no mistake in making that delivery. The jury says they did. The jury made such finding specifically in response to a special interrogatory submitted to it by the court. Under principles of law too well settled to require citation of authority, this Court cannot, on that pointed issue of fact, invade the province of the jury and say that its finding in that particular is wrong. Such would be our duty if the finding were against a plain preponderance of the evidence or inconsistent with physical facts. Such is not the situation. It is not denied by the defense that two other mistakes in the delivery of kerosene and gasoline were made by truck men of the defendant in the same general community. One of these other mistakes was made just five days subsequent to the delivery of the 77 gallons of liquid to Dickinson, and the operator who made the mistake was the same man Miller who assisted in making the delivery to Dickinson. True, in both of these two other instances the mistake was discovered by the delivery man at the time that it was made and proper steps were immediately taken to avoid any difficulty by reason thereof.

In this connection it is said on behalf of defendant, if Hampton and Miller in fact made a mistake when making the delivery to Dickinson, that, in order for a mixture to have been created on the basis of fifteen per centum gasoline and eighty-five per centum kerosene, as claimed by plaintiff, it would have been necessary for them to include in their delivery to Dickinson 16½ gallons of gasoline. And, not only so,

but that if they made that mistake there was left in their custody an extra amount of kerosene in the same gallonage, 16½ gallons, which it was necessary for them to dispose of under the guise of gasoline in order to make their records clear for that day. The defense urges that it is highly improbable that a counter-balancing mistake of that sort could have been made, and that there is no basis on which to assume that the truck men after making delivery to Dickinson purposefully delivered 16½ gallons of kerosene instead of gasoline to some one else in order to cover up their mistake. Plaintiff did not carry the burden of establishing by proof what may have happened with reference to other deliveries, nor was it incumbent on the jury to explain what may have happened with respect to the excess amount of kerosene left in the hands of the truck men, occasioned by the mistake in the delivery to Dickinson, if they believed from the evidence that such mistake was made in the Dickinson delivery. The matters thus presented by the defendant were, of course, proper for defense, but they were not conclusive and were not binding on the jury.

Proceeding now from the basis of the jury's specific finding that Hampton and Miller mixed gasoline with kerosene when making delivery to Dickinson, the serious problem remaining for consideration is as to whether the plaintiff contributed to his own injury by the manner in which he undertook to use the contents of the can in starting a fire in his kitchen stove. There is the testimony of one witness that on the morning of the accident the plaintiff told him that he had carried a shovelful of burning coals from the grate in an adjoining room and had placed them in the kitchen stove before attempting to use the oil. Plaintiff denied that he made such statement or that he did such thing, and several other persons who were present at his home immediately following the accident, at the time that he is supposed to have made this statement, testify that they did not hear it. This special interrogatory was submitted to the jury: "Did the plaintiff, W. B. Cabell, place coals of fire, kindling wood and coal in the fire box on the cooking stove on the morning of the explosion and after so doing pour a part of the content of the oil can

thereon?'' To which interrogatory the jury replied: ''No hot coals, but coal, kindling, and contents of the oil can.''

Now, taking Cabell's own statement that there was no burning coal in the stove when he undertook to build a fire therein the morning of the accident, the query naturally arises as to what could have caused the explosion, regardless of whether he was using kerosene or a mixture of kerosene and gasoline. Experts introduced on behalf of the plaintiff say that it could have been caused by a spark generated by static electricity. Experts for the defendant say that it could not have happened that way. The latter, taking as a basis for their opinion the statement of the plaintiff that when he started to pour the oil on the fire the can was eighteen inches distant therefrom, say that a current of many thousands of volts would have been necessary to cause a spark to pass that distance. None of the judges of this Court are experts in electricity, and, of course, we do not assume to weigh the evidence of experts on the question of static electricity, but we are not at all favorably impressed with the theory that this explosion may have been caused by an electric spark. It seems unreasonable. And, if it was not caused in that manner, it must have been caused by heat in the stove. Accepting as true the plaintiff's statement that he placed no hot coals into the stove that morning and that he failed to discover the presence of any fire in the stove when he shook down the ashes and placed kindling and fresh coal therein, we are persuaded there must nevertheless have been some hot coals therein, or at least a spark of fire, carried over from the preceding night, and not discerned by the plaintiff when he was making preparations to start a new fire, and that such latent spark was sufficient to ignite the distillate or vapor generated therefrom. On that basis can he recover? We answer in the affirmative.

The plaintiff thought he was using kerosene. If he believed there was no fire in the stove after he had made an examination therefor, the use of oil was not negligence *per se*. In fact, the use of kerosene, generally, in the starting of fires is not negligence *per se*. *Tofano* v. *McIntyre*, 109 W. Va. 550, 155 S. E. 653, and numerous cases there cited. As to whether in such cases there was contributory negligence is

ordinarily a question for jury determination. In our recent case of *Trimble* v. *Steele,* 110 W. Va. , 157 S. E. 166, plaintiff was sustained in his recovery of damages for injuries suffered by him in starting a fire under a sawmill boiler with petroleum though he knew that live coals were present. The verdict and judgment were upheld on the theory that the employer had not warned the employee of the dangerous properties of petroleum, though the employer had told the employee that the petroleum furnished by the employer could be used for starting fire under the boiler. The employee was inexperienced in the use of petroleum and ignorant of its highly volatile qualities. JUDGE LITZ and the writer of this opinion dissented in that case because the plaintiff admitted that he knew there were live coals in the fire box when he used the oil, and it seemed to us that, although the master may not have specifically warned the employee of the dangerous qualities of petroleum, he had the right to assume that the employee would not do such an utterly foolish thing as to throw a highly inflammable oil upon live coals in the manner in which it was done in that case. But even under the theory of that dissent we have a different situation here because so far as the record discloses the plaintiff did not know that there were live coals in the stove. Whether he was negligent in not ascertaining their presence was a question of fact for jury determination. If there was some fire in the stove (and we have already indicated that our experience and observation lead us to exclude the idea of a spark from static electricity) and the plaintiff had thrown kerosene on the same, he should have anticipated a flash and a flame when the oil came in contact with the fire, but, in those circumstances, it cannot be said with assurance that he should have anticipated an explosion in the oil can. This is another reason why the whole matter of the manner of the use of the oil by the plaintiff was for jury determination.

This case being one peculiarly for jury determination on the issues of fact presented, and there being no prejudicial errors of law, it follows that the judgment of the trial court must be affirmed.

*Affirmed.*